UVALDE ASPHALT PAVING CO. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.   October 16, 1908.)

MUNICIPAL CORPORATIONS—SEWER CONTRACT—DIVISIBILITY.

 A contract for the construction of a sewer and its appurtenances and of a sewerage disposal plant is divisible, so that the provision for the sewer and its appurtenances can be sustained, though the provision for the disposal plant is void, where the municipal authorities intended to have the two improvements separable, where the advertisement soliciting bids stated that "contracts" would be let, where when the bids were received the aggregate for each bid for the sewer was kept separate from the gross sum for constructing the disposal plant, and on striking everything pertaining to the disposal plant a complete contract for the sewer is left.

Appeal from Trial Term, Kings County.

Action by the Uvalde Asphalt Paving Company against the city of New York. From a judgment for plaintiff, defendant appeals. Modified and affirmed.

Argued before WOODWARD, HOOKER, GAYNOR, RICH, and MILLER, JJ.

Theodore Connoly (Terence Farley, on the brief), for appellant.

Edward M. Grout (James F. McKinney, on the brief), for respondent.

RICH, J.   The only question requiring our consideration is whether the contract upon which the plaintiff has recovered is entire or divisible. The learned trial justice has held that the agreement upon which the action is brought contained two contracts, one for the construction of the sewer and its appurtenances, and the other for the construction of a disposal plant, each of which was separate and distinct from the other; that the former was valid and binding on the parties, and the other void. The plaintiff has been permitted to recover the damages it has sustained through the breach of this contract by the defendant, and concedes, for the purposes of this appeal, that the contract for the disposal plant was illegal and void, because

of the failure of defendant's board of estimate and apportionment to comply with the requirements of its charter.

It appears that in February, 1904, the local board of the Jamaica district adopted a resolution for the construction of a sewer extending through portions of four streets, and 14 catch-basins connected therewith, "and the erection of a sewerage disposal plant in connection therewith," which resolution was approved by the president of the borough of Queens and the board of estimate and apportionment, who determined that the costs and expenses of the work should be charged against the property benefited. Plans and specifications for the construction of the sewer and catch-basins were duly prepared, and on August 11, 1905, the borough president advertised for sealed proposals for "constructing sewer and appurtenances" in the several streets named; "also the erection of a sewerage disposal plant in connection therewith." Then follow statements of the time allowed for such work, the bond required, the engineer's estimate of the quantity of sewer pipe and other materials required for, and the estimated rock excavation connected with, the construction of the sewer. Next follow these sentences:

"And the erection of a sewerage disposal plant in connection therewith. The bidder will state the price of each item or article contained in the specifications or schedules herein contained or hereto annexed, per yard or other unit of measure, by which the bids will be tested. The extension must be made and footed up, as bids will be read from the total. The bids will be compared and the contracts awarded at a lump or aggregate sum. Blank forms may be obtained, and the plans and drawings may be seen, at the office of the president."

An employé of the plaintiff went to the office of the borough president and procured the plan, profile, and specifications for the sewer and catch-basins, and was told:

"You know you will have to furnish your own plans and specifications, the same as they did in the Elmhurst contract that was let by us, which you know all about."

He was furnished some data and conditions under which it was purposed to construct the plant. Upon the printed forms and in conformity with the plans and specifications furnished the plaintiff bid for the sewer, and upon the data furnished and in accordance with plans and specifications prepared by it and accompanying the proposal the plaintiff bid for the disposal plant. The first sheet of the blanks so furnished by defendant's officers is termed a contract "summary," and refers first to the sewer, then says "also the erection of a sewerage disposal plant in connection therewith." This sheet is followed by a partly printed and partly written proposal, in which all material, labor, and excavation connected with the construction of the sewer are itemized and prices carried out opposite each item, followed by the words:

"And the erection of a sewerage disposal plant in connection therewith as per plans and specifications furnished with this bid, sixty thousand ($60,000) dollars."

Three bids were received for both the construction of the sewer and the erection of the disposal plant; that of the plaintiff being the

lowest for both.   In each of the three proposals each item entering into the construction of the sewer was bid for separately at so much a unit price, and the disposal plant was bid for at a lump sum.

The formal contract was signed November 25, 1904.   It recites that it is for the construction of a sewer in specified streets, "also the erection of a sewerage disposal plant in connection therewith."   Attached to it are specifications for the sewer, and separately the specifications for the disposal plant, prepared by the plaintiff.   On December 7th following notice was served on plaintiff requiring the commencement of work within five days thereafter.   It thereupon entered into various contracts for labor and material, and commenced work within the time limited, which it continued for a period of about three months, when the municipal authorities notified it that the contract was void and rescinded the same.   The plaintiff expressed its willingness to perform that portion of the contract connected with the sewer construction, and to waive that portion relating to the construction of the sewerage disposal plant.

I think the learned trial justice was right in holding that there were two separate and independent contracts, each complete in itself and not dependent upon the other.   There is at least a single contract containing severable or divisible portions, one of which, being invalid, may be rejected, and the other, being valid, may be asserted and enforced.   It was the intention of the municipal authorities in all of its proceedings prior to the signing of the contract to have the two proposed improvements separable, so that it might, under the authority given by section 397 of the charter (Laws 1901, p. 171, c. 466), let the construction of the sewer to the lowest bidder and the construction of the disposal plant to a different bidder, whose proposal therefor was the lowest.   In the advertisement soliciting proposals it is stated that "contracts" for the same would be let.   This phraseology must not be ignored, and there is no reasonable interpretation of it, other than that a contract would be let for the construction of the sewer and also for the construction of a disposal plant.   Separate prices were required, as we have seen, for each item connected with the sewer and its catch-basins.   When the bids were received, the aggregate of each proposal for the sewer was made up and kept separate from the gross sum bid for constructing the disposal plant.   The language of both the proposal and contract supports this construction.

The fact that the plaintiff was the lowest bidder for each of the proposed improvements, and but one paper prepared, in no manner limited the power of the defendant to let the contract for the sewer to one bidder and that for the disposal plant to another; nor is the plaintiff deprived of the right to have the valid contract contained in the written instrument separated from the invalid one and enforced. There is nothing in the nature of the sewer improvement that made its completion in any manner dependent upon the construction of the disposal plant.   If we were to strike out of the agreement everything pertaining to the construction of the disposal plant, there is left a perfect and complete contract in all its details for the construction of the sewer, and plaintiff's recovery must be affirmed.   Silberman v. Fretz,

16 Misc. Rep. 449, 38 N. Y. Supp. 151; Central N. Y. Tel. & Tel. Co. v. Averill, 58 Misc. Rep. 59, 110 N. E. 273; Knowles v. American Ins. Co., 66 Hun, 220, 21 N. Y. Supp. 50, affirmed without opinion 142 N. Y. 641, 37 N. E. 567; White v. Livingston, 69 App. Div. 361, 75 N. Y. Supp. 466, affirmed without opinion 174 N. Y. 538, 66 N. E. 1118; Merrill v. Agricultural Ins. Co., 73 N. Y. 452, 29 Am. Rep. 184; Pratt v. D. H. M. Fire Ins. Co., 130 N. Y. 206, 29 N. E. 117; Ming v. Corbin, 142 N. Y. 334, 37 N. E. 105; Gelpcke v. City of Dubuque, 68 U. S. 221, 17 L. Ed. 519; Treadwell v. Davis, 34 Cal. 605, 94 Am. Dec. 770. It appears, however, that the plaintiff is not entitled to the interest awarded to it, amounting to $3,321.53.

The judgment must be modified by the deduction of this sum, and, as so modified, affirmed, with costs. All concur.