William T. McDowell, Respondent, v. Starobin Electrical Supply Company, Inc., Appellant.

First Department, February 6, 1920.

Sales — action to recover for goods delivered — counterclaim for breach of contract arising out of failure to deliver within time agreed — evidence — waiver of breach with respect to payments for prior deliveries — right to terminate contract for failure to pay for installments delivered.

In an action to recover for the last shipment of goods sold by the plaintiff's assignor to the defendant to be delivered in weekly installments, held, on all the evidence, that a judgment sustaining defendant's counterclaim for a breach of the contract arising out of the failure of the assignor to deliver the last installment within the time agreed should be affirmed;

That any breach with respect to payments for prior deliveries was waived by the plaintiff's assignor.

*It seems,* that if deliveries had been made in weekly installments according to the contract, recovery could have been had for the failure to pay for an installment or the contract might have been terminated on that ground.

Appeal by the defendant, Starobin Electrical Supply Company, Inc., from a judgment of the Appellate Term of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 13th day of May, 1919, reversing a judgment of the Municipal Court, Borough of Manhattan, First District.

*Samuel Sobel* of counsel [*L. F. Fish* with him on the brief; *Sobel & Brand,* attorneys], for the appellant.

*Leon A. Malkiel,* for the respondent.

Laughlin, J.:

This action was brought on an assigned claim of the American Metal Moulding Company, a New Jersey corporation, for the sum of $275.50, being the balance of an account for goods, wares and merchandise sold by it to the defendant. The defendant pleaded as an offset a counterclaim for $277.50 against plaintiff's assignor for a breach of the contract arising out of the failure of the assignor to deliver all of the goods, which by the same contract on which plaintiff claims a balance to be due and owing, it agreed to sell and deliver to the defendant.

The contract on which the plaintiff's cause of action and the defendant's counterclaim are based was evidenced by a letter from the defendant to the plaintiff's assignor, dated June 16, 1917, which was accepted by the assignor on the 21st of the same month. By it the assignor agreed to deliver to the defendant 100,000 feet of No. 14 B (2) armored cable at the rate of 12,500 feet weekly or sooner at the request of the defendant and the defendant agreed to pay therefor fifty-eight dollars per 1,000, " net ten days." Plaintiff showed that the first shipment to the defendant under the contract was made July fifth and consisted of 7,215 feet and that payment therefor was made on August twenty-second; that the second shipment was made on July sixth, consisting of 6,135 feet, and it was paid for on September eleventh; that the third shipment was of

4,450 feet on July sixteenth and that was paid for on September twenty-eighth, and the fourth shipment, evidently of 3,545 feet, was made on July eighteenth and was paid for on October eighth, and that the fifth and last shipment, consisting of 5,000 feet, was made on September twenty-seventh and that had not been paid for and for it the plaintiff claimed under an assignment proved but not in the record. If the material had been delivered according to the contract, it would all have been delivered within eight weeks from June twenty-first, or on or before August sixteenth. Complaint was made by defendant from time to time with respect to the material delivered and plaintiff's assignor accepted the return of part of it and shipped other material in place thereof. Plaintiff proved the contract but rested without proving delivery of all of the material or compliance with the requirement that it was to be delivered at the rate of 12,500 feet per week. Defendant then showed that shortly prior to the delivery of the last 5,000 feet, it requested that plaintiff's assignor deliver 10,000 feet, and that when only 5,000 feet were delivered it again communicated with the assignor, which promised to deliver the other 5,000 feet within a few days, and that it inquired of plaintiff's assignor again after a few days with respect to the delivery of the other 5,000 feet and was informed that it was difficult to obtain the steel but that it would be able to make the delivery in a few days, and that, in about ten days, it communicated with the assignor again on the subject and was informed that a representative of the assignor would call on the defendant with respect thereto. The next interview between the defendant and the assignor, which defendant was permitted to prove, was a telephonic conversation between the defendant and one Johnson, president of the assignor, in which Johnson demanded payment for said 5,000 feet and stated that no further delivery would be made until that was paid for. There having been delivered at that time only 26,500 feet, as one witness testified, defendant's representative demanded delivery of the balance and manifested a willingness to pay for the 5,000 feet provided defendant was assured that the balance would be delivered, but such assurance was not given and Johnson said he wanted the last delivery paid for first and then he would see whether or not any further delivery would be made

Defendant then showed that the market price of the material on September twenty-seventh, when the assignor refused to make further deliveries unless the last delivery of 5,000 was first paid for, was sixty-five dollars per 1,000 and that it was obliged to fill the balance of the order in the open market at that price. Defendant also showed that it was ready, willing and able to pay for the material if delivered, but that on September twenty-seventh, fourteen weeks had elapsed since the contract was made and it had continually requested delivery of more material and the assignor had failed to deliver it. Evidently owing to the increase in price and to the attitude of the assignor, defendant was in doubt as to whether further delivery would be made. Defendant showed that the reason the payments were not made within ten days after the deliveries was that part of the material was defective and that the assignor accepted some of it back and sent other material in its place and that as soon as a delivery was made good by the replacement of the defective material, it was paid for. Plaintiff, in rebuttal, called the president of its assignor, who testified that he complained to defendant's representative with respect to the delay in making payments and stated that the assignor would deliver the goods if the defendant would live up to the contract, and that defendant's representative refused to pay unless other deliveries were made, and that the assignor was ready to receive back any defective material and to replace it.

This constitutes all the material evidence. The case was then submitted on briefs and the court decided that the plaintiff was entitled to recover $275.50 and that the defendant was entitled to an offset on its counterclaim for the same amount and gave judgment in favor of each against the other for the same amount, without costs. On the plaintiff's appeal the Appellate Term reversed the judgment in favor of the defendant on its counterclaim, with costs. The opinion of the learned Appellate Term goes upon the theory that the first breach of the contract was by the defendant in failing to pay for the first shipment within ten days, but that is explained by the evidence, which is uncontroverted, that it was owing to the fact that there was defective material which had to be returned and replaced. Moreover any breach with respect to

payments for the former deliveries was waived by the plaintiff's assignor, and when the last delivery of 5,000 feet was made, plaintiff's assignor was clearly in default, for all of the material should have been delivered long before that time. Doubtless if deliveries were made in the weekly installments according to the contract, recovery could be had for the failure to pay for an installment or the contract might have been terminated on that ground (See Pers. Prop. Law, § 126, subd. 2, as added by Laws of 1911, chap. 571; Id. § 146, as added by Laws of 1911, chap. 571; *Kokomo S. Co.* v. *Inman,* 134 N. Y. 92. See, also, *Hadfield* v. *Colter,* 188 App. Div. 563; *Pipe & Contractors Supply Co.* v. *Mason & Hanger Co.,* 181 id. 317); but deliveries were not made according to the contract and it was not terminated and the delivery for which the recovery had been had by plaintiff was not of the amount called for by the weekly installment delivery. The complaint, therefore, should have been dismissed, but since the defendant did not appeal, that point is not before us and we are only concerned with that part of the judgment which allows the defendant an offset for a breach of the contract on the part of plaintiff's assignor equal to the amount of the plaintiff's claim. That offset was established and was properly allowed by the trial court.

It follows that the determination of the Appellate Term should be reversed, with costs, and that part of the judgment from which plaintiff appealed should be affirmed, with costs.

Dowling, Smith, Merrell and Philbin, JJ., concur.

Determination reversed and judgment of Municipal Court so far as appealed from by plaintiff affirmed, with costs to defendant, appellant, in this court and in the Appellate Term.