ALBERT HARRIS, Respondent, *v.* WILLIAM EINHORN,
Appellant.

(Supreme Court, Appellate Term, First Department, January Term
— Filed February, 1921.)

**Sales — action for goods sold and delivered — retention of partial
delivery — counterclaim — damages.**

> While a vendee who accepts, retains and uses a partial
> delivery of goods due in a single delivery may be held for the
> purchase price thereof he is also entitled to relief against the
> vendor for damages because of delay or default in the delivery
> of the balance of the goods.
>
> An oral contract for the sale of luminette called for the
> delivery of three pieces at once, and twenty-one pieces to be
> shipped during the months of October and November, 1919,
> upon plaintiff's receipt of same. Prior to the date when pay-
> ment for the three pieces fell due, the plaintiff had received
> a number of pieces from his consignor but none had been
> delivered to defendant though he made frequent requests there-
> for. Plaintiff's demand for payment for the three pieces was
> refused because of his failure to deliver the remaining pieces
> called for by the contract. In an action for goods sold and
> delivered the defendant counterclaimed for the increased value
> of the goods not delivered because in the meantime their market
> price had risen. *Held,* that whether defendant suffered any
> damages by reason of plaintiff's failure to deliver according to
> the contract, was a question which should have been submitted
> to the jury, and a judgment entered upon a verdict directed
> in plaintiff's favor, after the dismissal of the counterclaim,
> will be reversed and a new trial ordered.

APPEAL by the defendant from a judgment of the
City Court of the city of New York, in favor of the
plaintiff, after dismissal of defendant's counterclaim
upon the direction of a verdict by the court.

L. O. Rothschild, for appellant.

Marks & Marks (Henry Pearlman, of counsel), for
respondent.

WAGNER, J.   Admitting the plaintiff's cause of action for goods sold and delivered, the defendant counterclaimed for breach of contract on the part of the plaintiff in failing to deliver the balance of the merchandise.   It appeared by stipulation made at the inception of the trial that plaintiff and defendant entered into an oral agreement on October 6, 1919, whereby plaintiff agreed to sell, and defendant agreed to purchase three pieces of luminette, to be delivered at once, and twenty-one pieces to be shipped during the months of October and November, upon plaintiff's receipt of the same.   Immediate delivery was made of the three mentioned pieces, payment for which became due seventy days after delivery, namely, December 16, 1919.   Prior to the last mentioned date, though plaintiff had received a number of pieces from his consignor, none had been delivered to the defendant, though the latter made frequent requests, plaintiff making the false explanation that he had received none.

Upon the trial plaintiff gave as a reason for his failure to deliver that he feared defendant's credit and desired to take no further risk.

On December 16, 1919, when the payment for the delivery of the three pieces in suit fell due, payment was demanded, met by defendant's refusal to pay because of plaintiff's failure to keep his engagement to deliver the remaining pieces provided for by the contract.   In the meantime the market, defendant claimed, for this commodity had risen in price, the increased value thereof forming the foundation for the counterclaim interposed.

It appears from an examination of the colloquy ensuing between court and counsel at the termination of the trial, that the theory upon which the learned court below dismissed the counterclaim and directed a

judgment in plaintiff's favor, was that although the plaintiff had broken his contract by failing to make deliveries as agreed before any breach by the defendant had taken place, the defendant had not, prior to December sixteenth, elected to treat the failure as a breach, and that his default on that date was fatal to any claim of breach on plaintiff's part by way of counterclaim. Analyzing the logic of this view it reduces itself to the following proposition: The plaintiff's failure to deliver goods as per contract was not a breach, because the defendant did not elect to treat it as a breach, but defendant's failure to pay for goods already delivered was such a breach as to deprive defendant of his cause of action which had arisen, though plaintiff had not elected to treat it as a breach.

It is undisputed that at the time the defendant defaulted in payment, the plaintiff had already committed six respective breaches of his contract to deliver the goods as received by him. Repeated requests for the delivery of the promised goods were made, with the response of inability of compliance. It is difficult to perceive how an election to treat the non-delivery as a breach, prior to its discovery by defendant, as the learned court held, was incumbent upon defendant, was possible under the circumstances. Consequently no reservation of rights was made, and defendant was relieved of any duty to rescind or take affirmative action with respect to such breaches until knowledge of plaintiff's deliberate act of deception in misleading the defendant had been brought to his attention.

When the date of payment for the prior lot had arrived and discovery of plaintiff's deception as to his contractual engagement had been made, payment was declined and demand made for damages suffered by reason of failure to deliver the remaining pieces.

Appellate Term, First Department, February, 1921.    [Vol. 114.

Therefore, both of the parties stood in identical positions. Both had breached their contract. Neither took any step to rescind it by reason of the other's breach. Under the circumstances the defendant clearly was entitled to counterclaim his damages, if he suffered any, because of such breach against the purchase price of the goods which he had received, and the dismissal of the counterclaim and a direction for plaintiff was, therefore, error.

It has been well settled that·a vendee who accepts, retains and uses a partial delivery of goods due in a single delivery, may be held for the purchase price thereof, and on the other hand may have relief against the vendor for damages because of delay or default in the delivery of the balance of the goods. *Deeves & Sons* v. *Manhattan Life Insurance Co.*, 195 N. Y. 324; *Avery* v. *Willson,* 81 id. 341; *Brady* v. *Cassidy,* 145 id. 171.

Tracing the logic of the rule to the situation here presented, we find it equally applicable, and so it has been recently held in *Goodyear Tire & Rubber Co.* v. *Vulcanized Products Co.,* 228 N. Y. 118, 125. There the goods in question were sold on terms of thirty days; the vendor delayed in delivery, and finally ceased to deliver. The last delivery was made on June twenty-fifth, which would have made payment due on July twenty-fifth. The defendant did not refuse to make payment or take a stand of any kind regarding plaintiff's breach until some time in October. The court, nevertheless, held that the defendant was entitled to recover on its counterclaim for plaintiff's failure to deliver as per contract, saying: "As has already been stated, the respondent finally refused to pay the purchase price due for goods actually delivered unless its claim for damages was recognized and assurances given of future deliveries. It did not attempt to cancel the

contract because of past defaults on the part of the vendor and we do not think that the record sustains this refusal to pay the purchase price or any part thereof  *  *  *.  Upon this refusal to pay, the vendor rescinded the contract and refused to make further deliveries and the question is whether these acts of the respective parties have in any way affected respondent's right to damages because of failure to make deliveries due before the rescission.  We do not think that they have.  Assuming that the vendor's prior and existing default did not prevent it from treating respondent's refusal to pay as a breach warranting rescission, we do not see that this relieved it from the liability which had already accrued for failure to make deliveries long past due.  The very rule which entitles appellant to claim the purchase price for partial deliveries made by its assignor, entitles respondent to assert the right which accrued at the same time to offset damages for failure to deliver the balance of the goods and we do not think that this right was lost by its subsequent conduct.''

This case is direct authority for appellant's position here.  In both the vendor failed to deliver as agreed.  In both the purchaser failed to make payments for deliveries when due.  In fact the validity of the contention is emphasized by comparison in the respective laxity and promptness of the claims made in the two cases.  See, also, *McDowell* v. *Starobin El. Supply Co.,* 190 App. Div. 676.

The rule enunciated in *Hadfield* v. *Colter,* 188 App. Div. 563, relied upon by the respondent, relates to an anticipatory breach of a contract which was kept alive by subsequent acceptances of later deliveries, and insistent refusals to consent to a proposition of cancellation.  That clearly distinguishes it from the present case.  Upon the evidence as adduced a ques-

Appellate Term, First Department, February, 1921.    [Vol. 114.

tion of fact was presented as to whether defendant suffered any damages because of plaintiff's failure to deliver according to the contract, which question of fact should have been submitted to the jury.

It follows, therefore, that the judgment must be reversed and a new trial ordered, with thirty dollars costs to the appellant to abide the event.

GUY and LEHMAN, JJ., concur.

Judgment reversed and new trial ordered, with thirty dollars costs to appellant to abide event.